Good morning. May it please the Court, Jeremy Freelander for the warden. I'd like to reserve five minutes for a rebuttal. Now, we're going to have both the appeal and the cross-appeal covered in the same presentation, so be sure and address both. Thank you. Well, unless the Court has questions, I'm going to confine my remarks. Getting a little feedback here. My remarks to the instructional issue, and in particular to the unreasonable application aspect of the instructional issue, as opposed to the contrary two-prong, and I will not address the jury's finding of, at a minimum, indifference to human life and major participation, which, as we say in the brief, is a separate and independent ground for affirming the California Supreme Court's finding of harmless error. So with that focus, I charge ahead. The issue for this Court is whether the California Supreme Court was unreasonable when it concluded, based upon the jury's special circumstance finding that Petitioner was engaged in robbery during the commission of murder, that the jury therefore necessarily decided that Petitioner was engaged in robbery before the killing. Counsel, before you get too far into that issue, we do have this question of exhaustion. Is the State waiving exhaustion at this point, or what's your view? The State is not waiving exhaustion, but I do believe this issue has been exhausted. It has been what? It has been exhausted, in my opinion. In what theory? What's your vision? The defendant brought a claim of instructional error on the felony murder count. That claim was adequate to contest felony murder. The district court reviewed the Chapman finding of the California Supreme Court, and I have not been able to find a case that says the talent, as for the Petitioner, has the burden in presenting his claim of presenting to the state highest court all the relevant circumstances for the Chapman analysis. If the defendant had said, we are now making a separate legal claim that this special circumstance is no good, apart from the underlying felony murder count, that would be a different question. In a sense, he's not making a legal claim here. He's simply making another, bringing to light another factual circumstance. That is to say that that second special circumstance instruction undermines the beyond a reasonable doubt finding by the California Supreme Court. Well, let me ask you this way. Has the Supreme Court of California had the opportunity to consider the finding made by Judge Wilkin when she had this in front of her? Of course not. But it had the opportunity to consider the instruction, the special circumstance instruction and the totality. Once you identify the instruction, every conceivable challenge to the instruction presumably is presented to the state court. Is that your argument? No. Once you have shown instructional error, it then becomes the requirement of the state court to assess all the relevant circumstances in determining harmlessness, including, as the court properly did in this case, whether another instruction, a jury's finding under another instruction, renders the first inadequate finding harmless. And in doing that Chapman analysis, the court has to consider all the factual circumstances that bear on this other instruction, including other instructions that the jury would see in light of it. Now, if the defendant was playing hide-the-ball here and saying, you know, bringing something into the record that hadn't already been there or saying that there is something now in the record that is somehow, you are not allowed to consider because of X, Y, or Z, that would be a different question. So I feel like I'm taking time here to argue the other thing. I gather your point is the instructional error was raised before the court. Both sides argued context. You're free to argue context or bring up jury instructions now you think provided the proper context, as is the defense. Is that kind of it in a nutshell? Yes, on the exhaustion question, as long as everything is in the record and fairly before the court as it was. Right. So why don't you go on to your unreasonable question. Now I'm back to whether there are two main attacks that the district court and our opinion petitioner is making on this harmless error finding. And I'll address them individually. But there's one rubric that we need to keep in mind, which is how the United States Supreme Court has told us to interpret jury instructions or how to evaluate how jurors interpret jury instructions. And they do so in a common sense manner in light of everything that's taken place at trial, which may sound obvious but is easily lost sight of. And without, I believe the term is technical paraphernalia and lawyerly parsing. That's Boyd v. California and Estelle v. McGuire. Moreover, when a prosecutor argues an interpretation that is favorable to the defense, as it did in Middleton v. McNeil, that's something that bears on the analysis as well. In our view, the only way that you can sustain the district court's reversal of the California Supreme Court's harmless error finding is by doing the very hyper-technical distinction making and lawyerly parsing that we know we're not supposed to do. Well, on a common sense analysis, you look at this trial and the jury comes back and they ask a question. The question is, basically, is knowledge prior to the commission of the crime or during the commission of the crime sufficient? And the court doesn't answer that question. They ask again whether or not somebody could be guilty of felony murder if he only facilitated by aiding. The court doesn't answer the question. So to my mind, just looking at a common sense approach, we had a jury that was confused about the very issue that's in front of us. So it doesn't take much parsing for me to say, well, we have a problem in this case. I respectfully disagree. The issue that is in front of us is not whether there was error in the felony murder instruction. The issue on the first attack by the district court on the California Supreme Court's error finding is whether that error spilled over and contaminated the special circumstance finding. Correct. Okay? Now, the special circumstance instruction said you, the jury, in order to determine the special circumstance, must decide whether the murder was committed while the defense defendant was engaged in robbery. The murder was committed while the defendant was engaged in robbery. So that instruction by its very terms requires the jury to decide when the murder was committed. Now, the California Supreme Court assumed that a jury of laypersons is going to say that when a murder is committed is when the killing occurs. And the district court is saying, no, that's not what the jury is going to say. The jury is going to say, because we've gotten this instruction on felony murder, a murder is committed when a felony murder is committed, and a felony murder is committed under our improper instructions whenever a robbery is committed and for the entire duration of the robbery. That is not a reasonable interpretation of how the jury is going to deal with this. Why not? Because nothing in the special circumstance instructions or comments by the court or counsel ever said that you could import the felony murder concept from the underlying crime into the special circumstance finding. Felony murder was never mentioned in the special circumstance context. Not only was it never mentioned, the instructions considered in context imply that you can't do this because the instruction says after you determine whether the defendant is guilty of murder, then you go on to decide this contemporaneity problem for the special circumstance implication, you have to make a separate and distinct finding. And if they were the same, you had to do just the same thing. There's no need for this next instruction. The prosecutor then made that very same implication when he said, if this, if you find that the defendant is the killer, then the special circumstance is the same. You don't have to do anything more. Implication, if you find that the defendant is not the killer or you're not persuaded that he's the killer, you do have to make a separate special circumstance finding. And then he made it explicit when he said the only way that you can find the special circumstance under aiding and abetting is if you find that when the killing occurred, the defendant intended for it to occur. That is the contemporaneity finding right there. Actually, it's more than what needed to happen. You didn't have to find all that. But it's clear enough from the prosecutor's argument that contemporaneity was required. Jury had no questions about any of the special circumstances or the special circumstance instructions. This jury was active in asking questions about everything else. It just requires inordinate speculation, in our view, to import this felony murder mistake into the special circumstance determination. Second attack by the district court is this notion that one special circumstance instruction negated or nullified the other special circumstance instruction. The first one, 8.80.1, said contemporaneity. You have to find that the murder was committed while the defendant was engaged in robbery. And you also have to find either intent to kill or reckless indifference to human life. The second special circumstance instruction, 8.81.17, said contemporaneity, or you have to find the murder was committed to carry out the robbery. District court's theory, the jury throws everything else out and focuses on that last prong and says the only thing that we have to do to find the contemporaneity thing is that last thing that says the murder was committed to carry out the robbery. That is not the commission of the crime or facilitate the escape or avoid detection. Yes. That's not a reasonable interpretation. Why isn't it a reasonable interpretation? It requires the jury to believe that this previous instruction that it got is completely not only unnecessary but completely wrong. Not only did the previous instruction say contemporaneity, which now this instruction is tending to contradict, but the previous instruction says you have to find intent to kill or reckless indifference to human life. And if you only follow that last prong of 8.81.17, you've just nullified everything the court has just said. That's problem number one. Problem number two, you are going to, jury is going to say, I am now going to find a special circumstance on this murder. This is not just a felony murder. It's a special circumstance murder. Why? Because of nothing that the defendant has done. It is irrelevant what the defendant has done. The only thing that matters is what the killer did, killing, doing the killing in order to carry out the robbery. That's not a common sense interpretation. And third, the verdict form. The verdict form says, let me get this right now, the defendant was engaged in robbery during the commission of the murder. Under the district court's theory, the jury is going to say the defendant was engaged in robbery during the commission of the murder because the killer did the killing to carry out the robbery. It is a complete non sequitur. It makes absolutely no sense. The jury had no questions about this. It had the instructions in front of it. It asked questions about everything that it was confused about. The prosecutor and the defense counsel never suggested any of this. This is not a reasonable interpretation of how the jury was going to do its instructions. I want to talk about the evidence as well, but I've got 38 seconds to do it, and I don't think I can do it in 38 seconds. So I'll sit down and come back. You retain the time for rebuttal. You may do so, counsel. We'll now hear from the appellee and cross-appellant. Thank you, Your Honor. Brantley O'Connell for appellee Pulido. Let me go right to the question which this Court faxed the counsel on Friday. I actually did submit a supplemental authorities letter in response to that letter. In response to the Court's Friday order. I'm not sure if it's been distributed to the panel. I think Miller L. versus Dredge directly answers the Court's question. I know the Court's very familiar with Miller L. from its Batson cases, and the Court knows that the juror comparisons and the prosecution's disparate questioning of white and black jurors was vital to the Supreme Court's ultimate finding of a discriminatory intent behind the peripteries. There was no discussion in the Batson arguments in the Texas courts of juror comparisons and disparate questioning. But as Justice Souter said in footnote two of the majority opinion, that didn't make any difference because Petitioner raised a Batson claim in the Texas courts. The complete Vordeer transcript was before the Texas courts in considering those claims, and Petitioner was entitled to discuss his theories about that evidence in presenting the claim in federal court. Now, this is an even more compelling case because here we're simply dealing with analyzing the California Supreme Court's assertion that the special circumstance instructions cured the error. Now, interestingly, the reason this had not been discussed earlier up to the decision of the California Supreme Court was that that particular harmless error theory, the emphasis on the wild language of the special circumstance instruction, was not asserted by the State Attorney General as a ground for harmless error in the briefing before the California Supreme Court. The Attorney General relied only on the theory that the reckless indifference major participant finding cured it. There was no discussion of that sentence which the California Supreme Court viewed as so significant, the during language. All that the district court did was taking the California Supreme Court's holding that the special circumstance instructions necessarily embraced a jury finding that the defendant was involved in, was aiding in the robbery at the time of the killing. The district court looked at those actual instructions, and in the course of that, recognized that in fact they did not necessarily resolve that finding. So, especially in light of Miller L., as well as of the additional sites in the letter which I faxed yesterday, and also filed a hard copy, I don't think there's really any problem at all in exhaustion. I do appreciate the State's counsel's concession at that point. So, let me move on to the merits. It is unreasonable to treat some other verdict, or a finding of some other verdict, as necessarily curing an error when, as Judge Wilkins' opinion reflects, an actual analysis of the instructions shows it did not require this finding. Now, the Attorney General has questioned, well, why the jurors had no reason to import the felony murder concept into the special circumstance instructions. Of course they did, because the only definition of murder the jury had received in the case in chief was felony murder. This jury was not instructed on premeditated murder. It was not instructed on implied malice murder. As far as the instructions that went to the jury, felony murder was felony murder. So, of course, especially in light of all the questions on the relationship between robbery and murder and the duration of robbery and robbery as continuing through the exportation, especially in light, not only the instructions on that point, but the jurors' keen attention to those points is reflected in their questions, of course they are bringing that concept of what constitutes felony murder to their analysis of the special circumstance. And the reason, I submit, that after we had these many, many questions, that we don't have an additional round of questions on the special circumstance is that the jurors did not perceive any divergence between them. Now, the questions go beyond just reflecting that the jurors were interested in aiding and abetting. Because, frankly, confounding though these felony murder instructions were, they really weren't confusing at all on what would be a legitimate theory of felony murder. I think the instructions were crystal clear that if Polito had been a participant in the robbery prior to the killing, that he would be liable for felony murder. The only explanation for the jurors' repeated pleas for guidance is that they were trying to sort out what Polito's culpability would be if, as he testified, his only role was assisting Aragon after the killing. And we know from their questions that that's what they were focused on. We know because, such as the question which Jess Thomas quoted a moment ago, when the jurors asked, does the knowledge of the main perpetrator's intent have to be before or during, and right there, right there was the opportunity for the district court to say, yes, you must have that intent before or during the killing. But instead, the judge said, we can't answer. There was also, and again a point I think very well analyzed in Judge Wilkins' opinion, the jurors submitted a diagram. They submitted actually two diagrams. One of them had two options. Diagram three had three options. The third of which was simply facilitates by aiding. It was actively commit robbery, aid with intent, facilitates by aiding. We have to, well, the state court, in applying Chapman, has to look at the whole record. This court, in applying Brett, has to look at the whole record. And it is compelling evidence that these jurors, some of them at least, were looking at the question of what if the basics of Polito's story are true? What if his role all occurred after the shots were fired? Because remember, because of these defective instructions, the jurors were left ultimately not having to make a finding that there was any assistance beforehand. What's your interpretation of the verdict form? You heard counsel's argument with respect to that. As the verdict form, it is the instructions that prevail over the verdict form. And, in fact, in California law, that point is very clear because there is two separate, there's a case called Trotter, which I cited in the brief, 1992 case, in which because of essentially a clerical mistake, the verdict form on a firearm enhancement referred to arming with an enhancement, which in California is actually a significantly lesser charge than use of a firearm. But all the instructions the jury had received were on use of a firearm, and the California court said that it's the instructions that prevail, so the verdict is deemed a finding of use. And I think it's especially true in a situation like this, where the jurors received all these pages of instructions on a special circumstance. It's impossible to encapsulate all those pages in the heading of a verdict form. And jurors, jurors do apply common sense. I will, let me seize the mantle of common sense because it is just a common sense assessment of the instructions and the verdict form that compels the conclusion that there was no finding of contemporaneity. In fact, on a common sense assessment, I doubt very much that that while phrase in the introductory sentence of the special circumstance instruction was picked up by any of the jurors, but even if it was, even if it was, we know that the body of the instructions did not compel them to make that finding. And again, that point is underscored once we look at this whole sequence of juror questions. There's another reason that I think this particularly plays, has a particular importance to this court's assessment under Brett, and that is in order to find harmless error, this court has to be confident that every one of the jurors who relied on the aiding and abetting theory, I don't know whether that was 4 or 8, because we just know the breakdown was 8-4, every one of that group actually made a finding that Polito did something prior to the killing. That's not because while you've got evidence, a strong circumstantial case that Polito did it alone, he was a lone perpetrator, and you've got evidence that Aragon committed the killing and Polito only aided him afterwards, any finding of some different role for Polito, other than those two, would essentially require the jurors to resort to extreme speculation. And it's much more likely that all or at least some of them would simply say, well, we don't need to resolve if he did anything before the killing, because we know that he helped afterwards, he's admitted that, so we don't need to make a finding that he did anything prior to that. I submit that under a Brecht analysis, it is still, even though there were lesser standards in Chapman, it is still the State that bears the risk, and a reversal is still required if there is a grave doubt. And the district court, upon reviewing everything, not just one sentence in the special circumstance instruction, but all the special circumstance instructions, all the jurors' queries, all the trial judges' non-responsive replies to those queries, and the evidence, the district court was left with a grave doubt, and I submit that this court should be as well. Is the role of input deference fit in your analysis? In my analysis, as the court knows, I have a couple of arguments. First, let me go just straight to the unreasonable application clause. I've also in the brief raised some issues under the contrary to clause as well, but just focusing on the unreasonable application clause. It is an unreasonable application for the State court to point to the special circumstances resolving everything when the actual content of the special circumstance instructions did not require such a finding. It is also unreasonable for the State court to look exclusively to that portion of the record and ignoring the potent evidence throughout the juror's actual reliance on an effective theory, because I know the Attorney General has discussed neither in some length in the briefs. Neither says you've got to look at the whole record, and you certainly, if you're just, if the State court is going to focus exclusively on the juror's finding on some other verdict, you certainly have to look at all the instructions as to that particular verdict to see whether in fact the jurors necessarily made that finding. And, of course, from the point of view of the State court, that determination has to be made with the confidence required by Chapman. Now, that is my argument as to the ground on which the California Supreme Court actually relied. Let me say something about the reckless indifference finding, that there is no epideference as to whether or not the major participant's reckless indifference aspect, the special circumstance, necessarily resolved this. Far from rely on that ground, the California Supreme Court essentially said, well, be that as it may, it's the wild language of the special circumstance that makes us confident that the jury necessarily made this finding. Because if one considers, I'm looking here at page 438 of the State's excerpts, the structure of this portion of the California Supreme Court's harmless error analysis, there is a paragraph, which is really a dispositive paragraph, in which the California Supreme Court discusses the wild language of the special circumstance instruction and the derring language of the verdict. Then, in the following paragraph, the Supreme Court continues, defendant argues the special circumstance finding is not dispositive because under another portion, the jury could have based its finding on the defendants being a major participant in the robbery and acting with reckless indifference. Such a finding defendant asserts could in turn have rested on defendants assisting Aragon after the killing instead of seeking help for force. We disagree. Post-killing assistance to Aragon by itself could not have been the basis for the jury's explicit finding that the defendant engaged in or was accomplice in a robbery during the commission of the murder. So the California treatment, Supreme Court's treatment of whether the reckless indifference, whether the defense version of the facts could support reckless indifference, they said, well, be that as it may, you haven't answered the during or while. Now, I would read this paragraph as implicitly agreeing with the defendant that the conduct the defendant described could support reckless indifference from being a major participant. California Supreme Court says, was essentially saying, even if so, in our opinion, this other aspect of the special circumstance, the while language, is dispositive. So the California Supreme Court never made a finding that these facts, that the defense version of the facts could not support a reckless indifference finding. And as this court has held in Van Linn and Hirshfield, there is no, when the state's court actually lays out its reason, there is no deference to some hypothetical other reason that it didn't rely on. And I think it's especially true when you have an opinion like this, where the California Supreme Court was given the opportunity by the attorney general's arguments to embrace this alternative theory of harmless error, the reckless indifference theory. But it didn't. Instead, it said, look, the during, while, that's the answer. So as to that argument, I don't believe there's any yet to deference. But I also think it applies not only to what the court did, but what it didn't do. Counsel, you're down to about two minutes. Do you want to say something about your cross-appeal? Your Honor, in view of the number of issues in that one, I think rather than discuss the merits of the cross-appeal, let me just make a suggestion as to order of arguments. In the event the court finds it necessary to deal with the cross-appeal, and of course I hope it won't, if it does, I suggest that the court start with the vouching issue. And I make that suggestion for a very simple reason. It's the cleanest issue of the cross-appeal issues. It does not require an evidentiary hearing. It can be considered on the current record and resolved on the current record. And it complements the error raised in the direct appeal. As we've been discussing, the error in the state's appeal goes to the reasoning of that group of jurors who relied on the aiding and abetting theory. The vouching issue goes to the other group of jurors, the jurors who evidently believed Aragon and thought Pulido was the lone killer. So my suggestion would be, first of course, that this court should simply affirm on the basis of the district court's judgment. But if it isn't convinced that the instructional error alone compels that result, I suggest that in approaching the cross-appeal, the court start with the vouching issue and assess its cumulative impact with the instructional error. And then, of course, if it still is not convinced of the cumulative prejudice, that it proceed to the other issues of the cross-appeal, though those issues would ultimately require an evidentiary hearing. So unless the court has any other questions in my 14 remaining seconds, I will submit. Thank you, counsel. No further questions. The State has reserved some rebuttal time. Your Honors, in our view, the Brecht analysis here is, if you believe that the district court was correct in saying the California Supreme Court was unreasonable in ruling out this after-killing involvement theory that the jury could have adopted, if the California Supreme Court acted unreasonably in that respect, then you, this court, still must weigh the evidence of pre-killing or post-killing involvement. That is to say, a reasonable probability, that's a translation of the Brecht standard, that the jury would have adopted or would have still believed in the possibility of this only post-killing involvement. And it's not enough for there to be substantial evidence. And, of course, there was substantial evidence of merely post-killing involvement because the defendant got up on the stand and he told that story. Substantial evidence is not enough. You need something more than that, and there wasn't more than that. The case for pre-killing involvement was not just, well, it wasn't overwhelming, but it was very close. The fact that four to eight jurors believed or were not persuaded that the defendant was the killer does not mean that four to eight jurors gave any credence to this absurd notion that he was this innocent who was victimized afterward. I've gone through the evidence. Even the theories, what else could they have believed, though? Because the prosecution's theory was he acted alone. The defense theory was, no, there were two people. And that was kind of the central theory. So if you buy into the defense theory as apparently four were inclined to do, that necessarily implies two people and could imply, because that's the only argument offered, that he participated later. Again, I respectfully disagree. The defense theory was not just that there was two people, but that one of the persons was Aragon. And most importantly, that the defendant was simply unknowingly along for the ride, completely unaware, sitting out in the car, heard a gunshot, ran in, and then basically under duress was forced to participate in this. That was the defense theory, and that theory was absurd.  You can believe that Aragon was the killer and not come close to believing that iteration or that part. But if we're asking a question about whether or not the knowledge occurs before or after, it necessarily implies that some of them were considering this. I realize your position was that it was absurd, and the prosecutor, by his closing, indicated he thought it was absurd. But it seems to me, applying a common-sense analysis, that some of the jurors didn't think it was absurd. I'm sorry. I'm not making myself clear. What was absurd was not that Aragon was the killer. I'm accepting that. I don't happen to believe it, but let's accept it. The jury thought it. The four to eight jurors thought Aragon was the killer. That does not mean that four to eight jurors believed or were likely to have believed that the defendant became involved only afterward. There is another very plausible explanation, at least one and more. It was the defendant's gun. The defendant had his fingerprints all over the cash register. The defendant knew where the bullets were hidden. The bullets, other bullets, were in the defendant's car. The defendant and Aragon could have said, hey, let's do this together. That's perfectly plausible. And you have that. Nobody argued that theory. They didn't argue it, but that doesn't mean that it wasn't very powerful. But you're saying let's take the theories argued. The prosecution said single-person crime defense said innocent dupe. He participated later. Somebody else did the crime. The third theory you're arguing now at least wasn't in play in the courtroom. It wasn't argued by the prosecutor, I'll give you that, although the prosecutor did say, did allude to aiding and abetting, although he disparaged it. But I'm saying that much of the evidence powerfully indicated that this person was a co-equal partner in this crime, especially that fingerprint on the Coke can. The defendant had no explanation for that fingerprint on the Coke can in the store. His explanation was, I could have touched it at a previous visit. The defense counsel himself disparaged this when he gets up in closing argument and says, I grant you, that's not a very good explanation. Perhaps what happened was the defendant, when he walked in after the killing, so the theory goes, happened to touch the Coke can. Not a good explanation in view of the fact that where the defendant was was not where the Coke can was, but putting all that aside, no explanation of how this Coke can migrates from the refrigerator to the counter in the first place. Defense theory asks you to believe that it got there simply so that the defendant could touch it, so that he could have another unfortunate coincidence to have to explain. The reason that that is so important is because it puts him in the store, aiding and abetting this crime, whether he was the killer or not. He was in at the get-go, and all the evidence points to his active involvement. It's true he had explanations, but explanations were implausible in and of themselves, and when you accumulate, aggregate all these explanations, what you have is an accumulation of fantastic explanations that wouldn't have applied. I've got 25 seconds. No, I don't? Your time has expired, counsel. I'm sorry. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Goodwin, O'scannlain, Thomas